IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE K. CAMPBELL, | ) | CASE NO. 4:08CV82 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE ECONOMUS |
| | ) | |
| MICHAEL J.  ASTRUE, | ) | MAGISTRATE JUDGE PEARSON |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

This is an action for judicial review of the final decision of the Commissioner of the

Social Security Administration denying Plaintiff Elaine K. Campbell's applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).  This matter was referred to this Court for the submission of a report and

recommendation.  Finding that the decision to deny benefits to Campbell is based upon proper

legal standards and supported by substantial evidence, this Court recommends that the Social

Security Administration's ("Agency") final decision be affirmed and the referral to the

undersigned Magistrate Judge be terminated.

1

## I. Overview

Campbell was fifty-three years old at the time she testified at the administrative hearing before the ALJ and provided the following information.  (Tr. 221.)  She obtained a GED and attended college for one year.  (Tr. 221.)  In 2001, Campbell had laminectomy surgery for treatment of a severe lumbar spine impairment and, in 2004, she had polyps surgically removed from her larynx.  Campbell claims that the laminectomy surgery has left her unable to stand or sit for long periods of time.  If she stands for too long, she experiences very sharp pain with spasms. (Tr. 234.)  If she sits for four hours and her back begins to hurt, she then needs to lie down.  (Tr. 238.)  She uses a cane for walking (Tr. 235) and generally lies down twice a day.  (Tr. 238.)  She can probably use her voice for approximately two hours in an eight-hour day due to the polyp removal surgery.  (Tr. 237, 238.)  Finally, Campbell estimates she can lift 20 pounds occasionally and about 10 pounds frequently throughout the day.  (Tr. 239.)

Campbell also testified that she has not been able to work since her polyp surgery in 2004.  (Tr. 222.)  Before that surgery she held several jobs including: (1) account representative which required her to speak on the phone (Tr. 221); (2) press operator where she worked on big steel presses (Tr. 223); (3) finisher sanding and trimming molds (Tr. 223, 224); (4) sandwich maker at Burger King (Tr. 226); (5) uniform sorter; (6) ingredient control technician (Tr. 227, 228); and (7) working for a temporary agency doing different jobs.  (Tr. 229.)

After careful consideration of all the evidence, including consulting with a Vocational Expert ("VE") the ALJ found that Campbell was not disabled.  (Tr. 20.)  Given that Campbell could be accommodated by a sit-stand option and testified that she can lift 20 pounds

2

occasionally and 10 pounds frequently, the ALJ found that Campbell is capable of performing her past relevant work as a finisher which the VE classified as a utility worker.  (Tr. 19.)

After reviewing the administrative record as a whole, including: (1) the medical and other evidence presented; (2) Campbell's testimony and statements made to medical care providers; (3) the testimony of the VE; and (4) the legal standards applied, this Court finds that the ALJ relied upon the correct legal standards and reached a decision based upon substantial evidence.

## II. Procedural History

Campbell applied for DIB and SSI on May 10, 2004 alleging disability due to diabetes and polyps on her vocal cords.  She has also maintained that she has difficulty sitting, standing, lifting and carrying things.  Her applications were denied initially and upon reconsideration. Campbell subsequently requested a hearing before an ALJ.  After conducting the hearing via video on May 9, 2006, the ALJ upheld the denial of DIB and SSI in a decision dated June 30, 2006.  The ALJ found that Campbell was not disabled as defined in the Social Security Act, from January 27, 2004 through June 30, 2006, the date of the ALJ's decision, because she could perform her past relevant work as a utility worker.  Following the ALJ's denial, the Appeals Council denied review prompting Campbell to timely appeal to this Court.  (ECF Nos. 15 at 1, 16 at 1.)

Pending before this Court are the parties briefs on the merits.[1]  (ECF Nos. 15, 16.) Plaintiff did not reply to the Defendant's brief.  Campbell has alleged the following assignment of error:

---

[1] In response to the Court's inquiry, Campbell's counsel acknowledged an error in pagination of her brief on the merits, i.e. page nine of Campbell's brief is not missing.

3

> Whether the Commissioner's decision is supported by substantial evidence when the evidence does not support a finding that Ms. Campbell is capable of performing past relevant work.

(ECF No. 15 at 1)

### III. Standard of Review

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971). Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence. "Substantial evidence is more than a scintilla of evidence, but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Svcs.*, 667 F.2d 524, 535, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528. 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 288, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without

4

interference from the courts.  *Mullen v. Bowen*, 800 f.2d 535, 545 (6th Cir. 1986).  The district

court may look into any evidence in the record, regardless of whether it has been cited by the

ALJ.  *Id.*  The reviewing court, however, may not try the case *de novo*, resolve conflicts in the

evidence, or decide questions of credibility.  *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984).

### IV. Law and Analysis

Campbell contends the ALJ erred in finding that she could perform her past relevant

work.  Although she set forth only a single assignment of error, Campbell attacked several

different components of the ALJ's ruling.  To the Court, it appears that Campbell claims that the

ALJ erred in the following ways:

> (1) his hypothetical question to the VE did not specify that Plaintiff needed
> a sit-stand option as provided in the ALJ's assessment of Plaintiff's
> residual functional capacity;
>
> (2) he found Campbell could perform her past relevant work as she
> actually performed it and as it is generally performed;
>
> (3) he relied upon the VE's testimony, although that testimony was
> inconsistent with the Dictionary of Occupational Titles ("DOT") in
> various respects;
>
> (4) a sit-stand option is inconsistent with the ability to perform light-level
> work; and
>
> (5) the VE identified too few existing jobs to provide substantial evidence
> supporting the ALJ's decision that Campbell could perform her past work.

The Court addresses each of these alleged errors below.

### A.     The Vocational Expert's Testimony Provides Substantial Evidence to Support the ALJ's Finding of an Ability to Perform Past Relevant Work

An ALJ follows a sequential five-step formula in determining whether a claimant is

5

disabled.  At Step Four, the ALJ determines the claimant's residual functional capacity ("RFC")

and, if necessary, progresses to determine whether the claimant can perform her past relevant

work.  In this case, the ALJ made the following determination regarding Campbell's RFC:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual functional
> capacity to lift or carry 10 pounds frequently and 20 pounds
> occasionally; alternately sit or stand at will; occasional
> climbing, balancing, kneeling, crouching, and crawling; and
> avoid continuous talking.

(Tr.17.)  The ALJ then progressed, after consulting a vocational expert, to find that Campbell is

capable of performing her "past relevant work as a utility worker (light/svp2) (fifty percent of

such jobs available when accounting for sit/stand at will requirement)."  He specified that "[t]his

work does not require the performance of work-related activities precluded by the claimant's

residual functional capacity (20 CFR 404.1565 and 416.965)."  (Tr. 19.)

 Campbell argues, at various times, that the VE's testimony does not or "cannot" provide

substantial evidence on which the ALJ can properly base his determination that she can perform

her past work.  Campbell is incorrect in both instances.  As a legal matter, an ALJ is permitted to

rely on the testimony of a VE for substantial evidence to support his determinations.  From a

factual perspective (relative to this case), the VE's testimony, in addition to medical evidence

and Campbell's testimony, certainly support the ALJ's determinations.

 Generally, an ALJ may use the services of a vocational expert or vocational specialist, or

other resources, such as the Dictionary of Occupational Titles to obtain evidence needed to assist

the ALJ to determine whether the claimant can do past relevant work, given the claimant's

residual functional capacity.  20 C.F.R. § 404.1560(b)(2).  A vocational expert may offer relevant

6

evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. *Id.* In addition, a vocational expert may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy. *Id.*

### 1. Specificity of Hypothetical Questions Posed to the Vocational Expert

Campbell claims that the ALJ posed hypothetical questions to the VE that lacked the specificity necessary to identify Campbell's limitations. Campbell wrote:

> While the exact limitation was not presented in the hypothetical question, the ALJ did question Ms. Guillory regarding a limitation of standing for only two hours. (Tr. 244). It was brought out in testimony by Ms. Campbell and the vocational expert that, as the utility job was actually performed, Ms. Campbell was required to be on her feet throughout the day. (Tr. 249, 250).

(ECF No. 15 at 8.)

Generally, a hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). However, in *Chandler*, the Sixth Circuit found no error in the ALJ's hypothetical that omitted several of claimant's conditions because: (1) the VE was aware of them due to claimant's testimony and (2) the claimant could have questioned the VE concerning the impact of these specific factors. *Chandler v. Secretary of Health & Human Services*, 1994 WL 669670 at *3 (6th Cir. Nov. 29,

7

1994).  If the VE is aware of claimant's limitations, failing to include them in the hypothetical is harmless.  *See, e.g., Young v. Barnhart, 362 F.3d 995, 1003 (7th Cir. 2004)* ("In many cases, imputing knowledge to the [VE] of everything in the exhibits and testimony from the hearing will be sufficient to allow an ALJ to assume that the [VE] included all of these limitations in his assessment of the number of jobs that the applicant can perform.").

In the instant matter, the ALJ initially put forth a hypothetical in which the worker could only stand or walk for two hours and had the ability to occasionally lift twenty pounds.  The VE answered that Campbell's last job as a telephone solicitor met this hypothetical.  The ALJ then modified the hypothetical and asked whether there were any light jobs that did not require more standing but had an emphasis on the weight the worker could lift.  The VE opined that utility worker and/or finisher would be a good fit for the modified hypothetical, because more than fifty percent of these jobs allowed for a worker to alternate between sitting and standing.  (Tr. 244.) When questioned by Campbell's attorney, the VE gave the same answer: more than fifty percent of the utility worker or finisher positions could be done with a sit-stand option.  (Tr. 251-253.)

Campbell's concern that the VE did not understand that any prospective work she could perform would have to accommodate her sit-stand and weight lifting limitations is without merit. Although the ALJ didn't use the exact words " sit-stand option,"[2] in his hypothetical, it is clear from his initial hypothetical question and follow-up hypothetical questions that the ALJ was inquiring about jobs that included a sit-stand option.  Moreover, the VE was present when

---

[2]  Specifically, the ALJ initially asked, "Now does any of these jobs fit the hypothetical in which there is only two hours of sitting – I mean of standing and walking though there is the ability to occasionally lift 20 and frequently lift 10 pounds?"  The ALJ went on to ask,  "Now I know that there are some light jobs that don't really require more standing because the emphasis is more on the weight that the person can lift.  Is any of these jobs like that?"  (Tr. 244.)

Campbell testified that the laminectomy surgery has left her unable to stand or sit for long periods of time; if she stands for too long she experiences very sharp pain with spasms; and if she sits for four hours and her back begins to hurt she needs to lie down.  (Tr. 234)  Even, assuming *arguendo*, if it were not clear to the VE that from the ALJ's hypotheticals that Campbell's alleged limitations precluded standing or sitting for any length of time, it was certainly clear from Campbell's testimony and the questions Campbell's attorney asked on cross examination concerning the impact of a sit-stand option, that the VE's analysis should include a sit-stand option.  *Id.* at1003-05 (noting that knowledge of such limitations may be imputed).

> ### 2. Substantial Evidence Supports the ALJ's Finding That Campbell Is Capable of Performing Her Past Relevant Work as a Utility Worker as it is Generally Performed

Campbell alleges that the VE's testimony does not provide substantial evidence to support a finding that Campbell is capable of performing the job of utility worker as actually performed *or* as it is generally performed.  (Tr. 243.)  Campbell's past relevant work was a finisher; a job that falls under a general heading of utility worker.  The record shows that Campbell is not capable of standing for a full eight-hour shift as she has in the past.  The VE testified that, as generally performed, more than fifty percent of the utility worker positions permits the worker to alternate between standing and sitting.  (Tr. 244.)  Thus, the ALJ deduced that Campbell is capable of performing more than fifty percent of the past relevant utility worker jobs as they are generally performed.  *See* e.g. *Studaway v. Sec'y of Health & Human Services, 815 F.2d 1074, 1076 (6th Cir. 1987)* (noting Secretary's determination was adequately supported by VE's testimony that a significant number of custodial jobs requiring only light exertion existed for claimant who could not return to a former custodial job requiring medium exertion.)

9

### 3.    Dictionary of Occupational Titles ("DOT")
####      a. Use of the DOT

The DOT defines jobs as they are *usually* performed in the national economy.  *Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994) ( the DOT provides only "composite descriptions of occupations as they may typically occur.").  The descriptions listed in the DOT "may not coincide with a specific job as actually performed in a particular establishment or any given industry." *Id.*  The DOT states, "[a]n occupation found to have certain characteristics in job situations observed by the employment service does not necessarily preclude the same occupation from having different characteristics in other job situations." *Id.*  It follows, as stated in the DOT, that requirements of specific jobs may require somewhat more or less exertion than the DOT description. *Id.*

#### b. Alleged Misidentification of DOT Code

Campbell claims that the VE's testimony cannot provide substantial evidence to support a finding that Campbell is capable of performing the job of utility worker as it is generally performed because the VE allegedly misidentified the code number the DOT assigned for utility worker.

This assignment of error is not well taken for reasons the Agency argued in its brief:

> The VE correctly testified that the DOT code for Plaintiff's past work as a finisher was 731.587-101  (Tr. 243) . . .  The VE further testified that finishing jobs were classified as utility workers  (Tr. 243).  Plaintiff advances no argument

10

> why, once the VE correctly identified the DOT code for
> Plaintiff's specific job of finisher, she was further required to
> provide DOT information for the more general category of
> utility worker that included finishing jobs.

(ECF No. 16 at 8.)  Campbell offered no rebuttal to this well-reasoned Agency argument and the

Court found no law or policy to the contrary.

### c. Conflict Between Vocational Expert and DOT

Although the VE testified that her testimony was based upon and consistent with the

DOT, Campbell claims that because the DOT does not accommodate a sit-stand option, the VE's

testimony cannot be based upon and consistent with the DOT.

Once again the Court finds no fault with the Agency position or the ALJ's finding:

> Plaintiff is correct the DOT does not specify the extent to
> which jobs permit workers to alternate between sitting or
> standing. In the case of such limitations . . . it is entirely
> appropriate for the ALJ to solicit testimony from a vocational
> expert.  SSR 82 -12. The DOT is not the sole resource an
> ALJ may consult in determining the manner in which jobs are
> performed. 20 CFR 404.1566 (d-e), 416.966 (d-e).  Nor are
> vocational experts limited to testifying solely to information
> contained within the DOT.

(ECF No. 16 at 8-9)

It is within the province of the ALJ to determine the VE's credibility.  *See Sias v. Sec'y of*

*Health and Human Servs*, 861 F.2d 475, 480 (6th Cir. 1988).  Credibility findings by the ALJ are

entitled to substantial deference upon review.  *See King v. Heckler,* 742 F.2d 968 (6th Cir. 1984).

Because the VE's answers were given in response to a hypothetical question that accurately

portrayed Campbell's impairments, the ALJ could justifiably rely on the VE's conclusions.  *See*

*Varley v. Sec'y of Health and Human Servs*, 820 F.2d 777, 781 (6th Cir. 1987); *Marziarz v. Secretary of Health and Human Services*, 837 F.2d 240 (6th Cir. 1987). In addition to hypothetical questions, the ALJ elicited testimony from the VE regarding Campbell's past relevant work; reviewed the documentary record; heard testimony from Campbell regarding her past relevant work and had the VE classify that past relevant work. (Tr. 19.) Moreover, as noted by the Agency and the ALJ in his decision, the ALJ "specifically asked the vocational expert to note and explain disagreement, if any, with the provisions of the DOT, and the vocational expert did not indicate any such disagreement." (ECF No. 16 at 9); (Tr. 19, 246.)

Further, Campbell's attorney had ample opportunity to, and did, cross-examine the VE at the hearing. The ALJ observed the VE's testimony, and determined that the testimony of the VE was reliable, concerning the type and availability of jobs Campbell could perform. Therefore, the ALJ did not err in relying on the testimony of the VE as there was substantial evidence to support a finding that Campbell is capable of performing the job of utility worker as it is generally performed.

### 4. Light vs. Sedentary Work

The record establishes that Campbell is neither completely sedentary nor capable of a full range of light duty work. Although Campbell acknowledges that, during her testimony, the VE differentiated between Campbell's ability to perform sedentary and light work, Campbell objects to the VE's testimony that Campbell is capable of some light work on the ground that her "sit-stand at will requirement is inconsistent" with light work. (ECF No. 15 at 10.)

Light work is defined as: lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds. 20 C.F.R. § 404.1567(b). Agency

regulations detail that light work "requires a good deal of walking or standing, or when it involves sitting most of the time . . . some pushing and pulling of arm or leg controls." _Id_. Heavy work requires six hours of standing or walking in a workday. SSR 83-10. Sedentary work requires no more than two hours of standing or walking in a workday. _Id._ Logic dictates that light work requires between two to six hours of standing and walking in a workday.

"Sedentary work involves lifting no more than ten (10) pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

If one is capable of performing light work, he or she can also perform sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

Campbell testified that she can occasionally lift twenty pounds. Her ability to lift twenty pounds, coupled with her sit-stand at will requirement, squarely positions Campbell between sedentary and light work. The VE made this point several times during her testimony. (Tr. 244, 252, 253.)

Campbell argues that her inability to walk or stand for more than two hours per workday or perform a full range of light work requires a finding that she is capable of only sedentary work and disabled. (ECF No. 15 at 10-11.) She fails, however, to cite any law or regulation that requires an ALJ to find her sedentary when evidence shows her capable of some range of light work. In fact, Social Security Regulation 83-12 ("SSR 83-12"), the regulation that applies in

situations such as this where a claimant falls between two exertional categories, severely undermines Campbell's argument.  When a claimant falls between two rules with direct opposite conclusions,  SSR 83-12 advises the ALJ to consult a VE.  It does not direct the ALJ to relegate a claimant to the lower exertional level.  *See e.g. Templeton v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 458, n. 2 (6th Cir. 2007) ( noting SSR 83-12 essentially advises an ALJ to determine whether the occupational base has been so eroded as to shift a claimant to a lesser RFC, but does not compel particular findings of disabled or not disabled).

In the instant matter, the ALJ followed the guidance of  SSR 83-12 .   In response to a series of hypothetical questions posed both by the ALJ and Campbell's counsel, which included Campbell's limitations, the VE identified "light work" positions that permitted a sit-stand option and testified that more than 50% of the utility worker jobs would allow a person to alternate between sitting and standing.  (Tr. 244.)  The VE's testimony provided substantial evidence in support of the ALJ's decision.

### 5. Significant Number of Jobs in the Economy

In a rather confusing paragraph, Campbell alleges that the VE's testimony was deficient because only ten percent of the light duty jobs identified by the VE were sedentary.  And, Campbell argues "ten percent of the jobs does not support [the ALJ's] finding that Campbell is capable of performing the utility worker position as it is generally required by employers."  (ECF No. 15 at 10.)  Campbell appears to be claiming that ten percent is not a significant enough quantity of jobs in the economy and cannot, therefore, constitute substantial evidence to support the ALJ's decision.  Sixth Circuit rulings contradict this argument.

At the threshold, a VE's testimony can constitute substantial evidence to support the

14

Secretary's findings that a claimant is capable of performing a significant number of jobs in the economy. *Bradford v. Sec'y of Dep't of Health and Human Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam). As importantly, when there is testimony by a VE that a significant number of jobs exist for which a claimant is qualified, it is immaterial that the number is a small percentage of the total number of jobs in a given area, *see Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), as long as the VE's testimony is in response to an ALJ's hypothetical question that accurately portrays a claimant's abilities. *Davis v. Sec'y of Health and Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990). In *Hall,* the court outlined criteria for determining whether work exists in significant numbers in the national economy.[3] The *Hall* court also indicated that ultimately the determination of whether a particular number of jobs is significant should be left to the fact finder's common sense in weighing the statutory language as applied to particular situations. *Hall,* 837 F.2d at 275; *see also Harmon v. Apfel*, 168 F.3d 289 (6th Cir. 1999) (finding 700 regional jobs sufficient when 700,000 exist nationally)

In the instant case, the VE's testimony as to the number of jobs in the economy was in response to the ALJ's hypothetical questions that accurately portrayed Campbell's abilities, including her need for a sit-stand option. Also, as noted above, the ALJ elicited testimony from the VE regarding Campbell's past relevant work, reviewed the documentary record, heard testimony from Campbell regarding her past relevant work and had the VE classify that past relevant work. The ALJ weighed the evidence and reasoned that Campbell is able to perform her

---

[3] Those criteria include: (1) level of the claimant's disability; (2) reliability of the VE's testimony; (3) reliability of the claimant's disability; (4) distance the claimant is capable of traveling to engage in the assigned work; (5) the isolated nature of the job; and (6) the type and availability of such work. *Hall,* 837 F.2d at 274-75.

past relevant work as a utility worker and that a significant number of utility worker jobs exist in the national economy.  (Tr. 20.)

## V. Conclusion

For the foregoing reasons, this Court finds the ALJ's denial of benefits to be based upon correct legal standards and supported by substantial evidence in the record.  Accordingly, the Court recommends that the ALJ's decision be affirmed and that the referral to this Court terminated.

Dated: February 5, 2009                             /s/Benita Y. Pearson
                                                       Benita Y. Pearson
                                                         United States Magistrate Judge

OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).